UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
C.A.# 04-10550-WGY

JACQUELINE LASSITER

v

KIMBER ANDERSON ET AL.

MEMORANDUM IN SUPPORT OF
OPPOSITION TO MOTION TO
DISMISS CLAIM UNDER
42 USC SS 1985-6

FACTS:

The Complainant, Jacqueline Lassiter, is an African American female citizen of the United States and a member of the protected class.

On or about 10th.October, '02, plaintiff began employment with the defendant Fleet Bank at Exeter Plaza, Boston, Ma. Complainant was qualified for the position and competently discharged her duties.

The Bank promulgated and did distribute to its employees, including the Complainant, an Employee Handbook, in which was contained a section labelled: EQUAL EMPLOYMENT OPPORTUNITY POLICY/AFFIRMATIVE ACTION. The Bank, inter alia, stated that it was "committed to furthering the objectives of Equal Employment Opportunity and Affirmative Action. It also claimed that " .. We expect each manager and employee to be an active partner in this effort by supporting in word and deed the spirit and principles of EEO and Affirmative Action". Ex.2, p.2.

The Handbook also contains a guarantee of FREEDOM FROM HARASSMENT , at page 3 of the document. The Bank indicated that an individual who "raises a concern related to harassment or discrimination" "may do so without reprisal, criticism or negative consequences". Ex.2, pp.2-3.

In entering into and remaining in the employ of Fleet, the Complainant was entitled to rely and did rely upon these pledges of the Bank which were sufficient to form the terms of a contract.

1

The Handbook made provision for FLEXTIBLE WORK ARRANGEMENTS. Ex.2, p.32. In pertinent part, the language of the Handbook permits an employee, with a manager's approval, to " .. choose among several options, including: part-time, flex-time, afford flexibility to employees who need "alternate work schedules" to work with managers to create such arrangements suitable for them and for the department's business needs.

The plaintiff's request for a change in schedule, as adverted to by the defendants, was entirely consistent with the Flexible Work Arrangements proviso of the Handbook. Defendants appear to have taken exception to the plaintiff's availing herself of a policy which they themselves state that she is entitled to use and from which other white employees have benefitted. Plaintiff on or about 23rd.March, '02, informed her supervisors, including defendant Gibbs, that she intended to avail herself of the flexible schedule, that she knew that an exception had been made to the policy that employees work on Saturday .

Defendant Gibbs, discriminatorily denied plaintiff's request. White employees of the Bank were able to take advantage of the flexible work schedule.

The Bank's Employee Handbook contains a section labelled EMPLOYEE ISSUE RESOLUTION PROCESS (EIRP), whose language indicates that it was established to provide a medium through which employees could resolve work-related issues, including but not limited to working conditions, disciplinary treatment, harassment and discrimination.

The Bank also claimed that the EIRP was designed to ensure that the employee would not encounter reprisal, criticism or negative consequences on account of having resorted to its mechanism.

The Complainant vehemently disputed the allegation that she had exceeded the annual limit of $625 in teller differences. Indeed, the evidence indicates that Mrs.Lassiter had protested the discriminatory conduct of

her white female supervisor, Ms.Kimber Anderson, who had ordered that teller differences for which Nelson Velez, a white male, was responsible, be attributed to Lassiter. There was a face-to-face meeting between Anderson and Mrs.Lassiter, as part of the EIRP, at which time, Mrs.Lassiter sought to find out from Anderson the reasons why she was being charged with Velez' mistakes. Lassiter told Anderson that her actions and orders were discriminatory.

Anderson refused to engage in a reasonable discussion with plaintiff, became belligerent, raised her voice at plaintiff and ordered that she return to her work station.

Plaintiff notified defendant Gibbs that she believed that Anderson was retaliating against her because she had learned of Anderson's discriminatory action and that Anderson had shouted at plaintiff.

Plaintiff sought a promotion and did interview for the new position at a different location. Despite the fact that plaintiff was qualified, the Bank, discriminatorily and retaliation for plaintiff's opposition to discriminatory practices, denied the plaintiff the position.

The Bank's Policy on Attendance and Punctuality permitted up to eight absences within a twelve month period. Plaintiff was charged with five absences in a twelve month period. Nonetheless, the individual defendants charged plaintiff with violation of the Policy.

The Final Warning given to plaintiff by defendant Gibbs, on or about 13th.April, '02, was based in part on the teller overages, discriminatorily charged to the plaintiff, by Anderson.

The rationale offered by the defendants and all of them for the involuntary termination of the plaintiff, was pretext for unlawful discrimination and was in retaliation for the plaintiff's opposition to and protest against discriminatory practices of the defendants. The termination was in violation of the provisions of the Employee Handbook and was a violation of the promise that the Bank would not engage in reprisal against those employees who resorted to the EIRP and that the Bank would observe fair employment practices.

Defendants Anderson and Gibbs, even though they were aware of the plaintiff's right to be free from discrimination in the terms and conditions of employment, did conspire to cause her to be subjected to unlawful discrimination and retaliation and omitted to take reasonable measures to correct same or bring the discrimination and retaliation to an end. In furtherance of their conspiracy, the defendants did cause plaintiff to suffer injury to her person and property, because of her race and colour.

### THE FACTS SHOW THAT THE RESPONDENTS ENGAGED IN DISCRIMINATORY AND RETALIATORY CONDUCT AGAINST THE COMPLAINANT

A plaintiff makes out a prima facie case of racial discrimination by showing that: She is a member of the protected class; she was qualified for employment; she was subjected to adverse employment action and the action was taken under circumstances which give rise to an inference of adverse discrimination. Norton v. Sam's Club, 145 F.3d 114, 118 (2d.Cir.,1998), cert. denied, 119 S.Ct.511 (1998).

The facts show that the complainant did not violate the policy relative to attendance and punctuality. That policy could not therefore have been part of any legitimate basis for a decision to terminate.

Once there is a showing of pretextuality, the factfinder may reject any articulated rationale for the adverse employment decision taken against the Complainant by the respondents. Abramian v. Pres. & Fellows of Harvard College, 432 Mass.107 ('00).

The facts show that the self-same Kimber Anderson, a white female, who discriminatorily ordered that at least one overage committed by a white male, Velez, be charged to Complainant, became belligerent toward Mrs.Lassiter when Lassiter protested this act of racial discrimination and retaliation. Anderson, shortly after this event, ordered the Complainant terminated. The decision to terminate was made exclusively by white supervisory officials, who acted in a subjective and arbitrary manner. The

4

record shows that the Complainant had not violated the policy with regard to attendance nor had she exceeded the limits on teller differences. On the issue of discriminatory intent, the court may consider the paucity or lack of members of the protected class among the supervisors who made the adverse decision. Richards v. Bd. of Ed., 668 F.Supp.259 (S.D.N.Y., 1987) aff'd., 842 F.2d 1288 (2d.Cir.,1988). The general rule is that where subjective employment decisions are made by supervisors who are not members of the same race or class as the employee affected, the court will carefully scrutinize such decisions. Bennett v. V.A. Medical Ctr., 721 F.Supp.723 (E.D.Pa.,1988).

Additionally, where, as in the instant case, there is an absence of objective criteria for the making of personnel decisions, such decisions will be meticulously examined to determine whether the supervisors were discriminatorily motivated. Howard v. BP Oil Co., 32 F.3d 520 (11th.Cir.,1994).

The facts show that the respondents engaged in retaliation against complainant after she protested racial discrimination, in a face-to-face meeting with her white supervisor, Kimber Anderson. The said Anderson became incensed that plaintiff had learned that Anderson had discriminatorily charged her with Velez' overage and dared to voice her opposition to this discriminatory conduct. Anderson became annoyed and shouted at Mrs.Lassiter. She refused to engage in any discussion with Mrs.Lassiter. .

Shortly after this incident, Anderson, acting together with Gibbs, moved to have Lassiter terminated.

The court may consider any evidence of pretext or whether the employer acted with regard to the complainant in a manner different from its established policy. Unger v. Consolidated Foods Corp., 26 FEP 1025 (7th.Cir.,1981) vacated and remanded on other grounds, 456 U.S. 1002.

The respondents own policy permitted an employee up to 8 absences within a one year period. The record shows that at the time when the complainant was charged with an alleged unexplained failure to report to work on 11th.May, '02, she had not exceeded the limit. Thus, this absence, without more, could not legitimately have been the reason for the abrupt termination.

The more likely explanation for the adverse decision, was that Anderson seized upon this incident to rid herself of a black female who had dared to confront her over her blatant act of racial discrimination. Where the termination came quite shortly after Mrs.Lassiter protest, he court is entitled to infer that Anderson, Gibbs and the Bank were motivated by retaliatory animus.

## THE WELL PLEADED FACTS ARE SUFFICIENT TO SHOW A CONSPIRACY

A plaintiff states a claim under S.1985(3) by alleging a conspiracy whose purpose was to deprive, either directly or indirectly, any person or class of persons of the equal protection of the law or of equal privileges or immunities under the law. The plaintiff must also prove an act in furtherance of the conspiracy, whereby s/he is either injured in person or property or deprived of any right or privilege of a citizen of the United States. The conspiracy, must be alleged to have been motivated by racial animus.

It has been held that 42 USC S.1981 provides a substantive basis for redress under S.1985(3)..See, Kwoun v. S.E. Mo. Pro.Standards Review Org., 62 F.Supp.520 (D.C.,Mo. 1985). That same court also stated that under Rule 8, FRCP, "technical niceties of pleading are not required", in rejecting the defendants' motion to dismiss on the ground of failure to adequately allege the existence of a conspiracy. Id., at 528-529.

Paragraph 31 of the Verified Complaint in the instant action, unambiguously list the wrongs done by defendants, Anderson and Gibbs in furtherance of the conspiracy: caused her to be subjected to unlawful discrimination and retaliation. The predicate for this paragraph are the wrongs of the defendants listed in the preceding paragraphs, including but not limited to paragraphs: 24, 27, 28. 30, and paragraph 32.

The plaintiff is not required to show direct evidence of an agreement between the conspiratorial defendants, circumstantial evidence is sufficient. Lenard v. Argento, 699 F.2d 874,(7th.Cir., 1983), cert. denied, 464 U.S. 815.

The facts show that the defendants, Anderson and Gibbs, acted in concert in subjecting plaintiff to discrimination, that plaintiff had complained

to Gibbs of Anderson's discriminatory and retaliatory actions and that Gibbs, joined with Anderson in having plaintiff terminated, because of her race and retaliation for her opposition to discrimination. These facts are sufficient to sustain a finding of liability on the count of conspiracy.

CONCLUSION:

For the reasons stated above and because the Complainant has well pleaded a claim for conspiracy as well as one for the failure of the defendants to halt the conspiracy.

The defendants motion to dismiss should be denied.

Plaintiff,
By her Attorney,

W. Kendall
136 Warren Street
Roxbury, Ma. 02119
(617) 442-6130