FILED
IN CLERKS OFFICE
2005 JAN 25 P 3 30
U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
C.A. #04-10550-WGY

JACQUELINE LASSITER

v.                          JOINT FINAL PRE-TRIAL
                            MEMORANDUM

KIMBER ANDERSON ET AL.

SUMMARY OF EVIDENCE THAT WILL BE OFFERED BY PARTIES

PLAINTIFF'S EXPECTED EVIDENCE:

Plaintiff was first employed by the defendant Fleet Bank in October, '01. At the time of the first employment plaintiff was qualified for her employment as a Teller.

Defendant is a federal contractor and is required to maintain an Affirmative Action Plan ("AAP") and to designate officials responsible for ensuring that personnel decisions, including but not limited to: hiring, promotion; discipline and termination are made in conformity with the AAP.

The defendant has been unable to produce an AAP, upon the request of the plaintiff, in discovery. The defendant did not have an Affirmative Action Officer during the period of plaintiff's employment.

During the initial phases of her employment, plaintiff performed her duties so well that she was chosen to participate in an Employee Focus Group held at the corporate headquarters, Federal Street, Boston.

After her participation in the Focus Group, defendant Gibbs, a white male Branch Manager, summoned the plaintiff to his office and reprimanded her for her apparent criticism of supervisors at the Exeter Plaza Branch. Gibbs told plaintiff that what happened in the Branch should not be disclosed outside of it. Plaintiff believed that as a result of this upbraiding, that she could not expect non-discriminatory treatment from Gibbs.

Defendant Anderson, a white female Branch Operations Manager,

1

unreasonably charged plaintiff with violation of the Bank's Policy on Attendance and Punctuality. The facts show that plaintiff did not exceed the number of absences permitted by the policy nor was she tardy on more occasions than permissible.

The evidence will show that Anderson discriminatorily ordered that Teller differences for which a white male Teller, Velez, was responsible, should be charged to plaintiff. Plaintiff spoke to a certain Pam LNU (plaintiff has indicated to defendants that she believed that the last name o f this individual was "Menaud" but that she was unsure of the correct spelling) by telephoning her at a number provided to her by a certain Anne who was a supervisor at the Copley Branch. Pam told plaintiff that it was Anderson who had ordered that the teller differences of Velez be charged to plaintiff.

Plaintiff attempted to verify the information which Pam had provided to her by inspecting Teller tapes at Exeter Plaza. However, Anderson shouted at plaintiff and ordered her back to her Teller Window. Plaintiff told Anderson that her actions were discriminatory and that she did not want plaintiff to find out the truth.

Gibbs and Anderson discriminatorily placed plaintiff on Final Counsel, in April, '02, based on her purported employment history which contained the discriminatorily attributed Teller differences and on a record of attendance which was not in violation of the Bank's Policy.

On Saturday, 11$^{th.May}$, '02, plaintiff telephoned the Branch and spoke with a certain Kayon Kerr, a fellow worker, and notified her that she would not be reporting to work and asked her to so inform the supervisor. It was the practice for employees to telephone and notify whomsoever responded, that s/he did not intend to report to work on the given day.

After the termination, plaintiff sent an electronic communication to defendant Gibbs complaining about the termination. When Gibbs telephoned plaintiff at her home, plaintiff explained that the termination was discriminatory

and retaliatory on the part of Anderson who was annoyed that plaintiff had complained about her racial harassment and discrimination and who did not want the truth to be revealed.

Gibbs told plaintiff that he did not think that Anderson was discriminating against her and that he would report back to her.

When Gibbs did telephone plaintiff, approximately two weeks later, he told plaintiff that he agreed with the termination.

Defendant Anderson, on or about $15^{th.May}$, '02, orally, notified plaintiff that she was terminated. The employer never provided plaintiff with a writing in which it explained the reasons for the termination.

In their Initial Disclosures, the defendants did not list Pam LNU as an individual likely to have knowledge of discoverable information that defendants could use to support their claims or defenses.

At her deposition taken by plaintiff on $10^{th.January}$, '05, defendant Anderson testified that she had spoken to "Pam" on more than one occasion with regard to Teller differences. She also stated that she obtained Pam's name and telephone number from the Bank's telephone directory. The defendants knew of the existence of Pam, an employee of the Bank and of her importance to plaintiff's case and to the Affirmative Defenses which they have interposed.

Defendants have taken the position that they have no information with regard to Pam, whose surname the plaintiff believed to be "Menaud".

There are no Teller Tapes which disprove plaintiff's assertion that some of the mistakes of Velez were discriminatorily attributed to plaintiff.

Plaintiff interviewed for a position as Training Specialist II. The results of the interview were favourable and plaintiff expected to have a second round of interviews. Defendant Bank terminated plaintiff prior to the second interview.

DEFENDANT'S EVIDENCE

(i) LIABILITY:

1. Defendants expect the evidence in this employment discrimination case to

show that Plaintiff was terminated on May 21, 2002, after she failed to report for work on May 18, 2002, that this absence was her sixth day in only 7 months of employment and it occurred while she was on a final written warning for three areas of performance deficiency, including tardiness and absenteeism.

2. Defendants expect the evidence to show that Plaintiff began her employment as a full time Teller with Fleet on or around October, 10, 2001, that she underwent mandatory human resources orientation in which she received Fleet's employee policies, including its policies related to discrimination and harassment and information about how to contact employee relations with problems or concerns and that she underwent Teller training in which she received training concerning her duties and responsibilities as a Teller, including her responsibilities for accuracy and requirements of the Bank Secrecy Act.

3. Defendants expect the evidence to show that Plaintiff was hired to work at Fleet's Exeter Plaza branch as a full time Teller and that she began her assignment there following her training.

4. Defendants expect the evidence to show that in January 2002, Plaintiff requested a part time schedule and that Fleet and its branch manger, Gibbs, permitted Plaintiff to reduce her hours.

5. Defendants expect the evidence to show that, as a general rule, part time Tellers of the Exeter Plaza branch were required to work on Saturday and that full time Tellers worked Saturdays on a rotating schedule.

6. Defendants expect the evidence to show that Plaintiff's performance, both as a full time employee and a part time employee was not meeting Fleet's objective and clearly-articulated expectations in the areas of teller differences, Bank Secrecy Act compliance and attendance and punctuality.

7. Defendants expect the evidence to show that Plaintiff received written warnings or counsels for her performance in the area of teller difference and Bank Secrecy Act violations on March 12, 2002. Defendants expect the evidence to show that Plaintiff acknowledge receipt of these warnings by signing the

documents.

8. Defendants expect the evidence to show that prior to April, 13, 2002, Gibbs gave Plaintiff permission to post or apply for the position of Training Specialist II. Defendants expect the evidence to show that Fleet had a policy that employees could not seek transfer within the company until they had at least 12 months of service, unless they received their manager's approval. Defendant expects the evidence to show that with Gibbs' approval, Plaintiff posted for the Training Specialist II position, was interviewed for such position but did not receive an offer.

9. Defendants expect the evidence to show that n April 13, 2002, Plaintiff received a 90-day final counsel warning for her performance in the areas of teller differences, Bank Secrecy Act violations and for excessive tardiness and absenteeism. Defendants expect to show that Plaintiff acknowledged receipt of this final warning by refusing to sign the document and submitting a written statement to Gibbs and Anderson to the effect that she would investigate the allegations and inform her managers of her position at a later date.

10. Defendants expect the evidence to show that after placing Plaintiff on her 90-day final counsel warning, Defendants expected her performance to improve and that she would not be tardy or absent from work on scheduled days, without approval.

11. Defendants expect the evidence to show that Plaintiff, while on her 90-day final counsel warning, failed to report to work as scheduled on May 18, 2002.

12. Defendants expect the evidence to show that Anderson, Plaintiff's supervisor, conferred with Fleet's employee relations representative, Stacey Micka, regarding Plaintiff's performance and absence on May 18, 2002. Defendants expect the evidence to show that the decision was made to terminate Plaintiff in accordance with Fleet's written performance expectations for employees on written 90-day final counsel warning for job performance.

13. Defendants expect the evidence to show that Gibbs did not participate in the

decision to terminate Plaintiff's employment with Fleet.

14. Defendants expect the evidence to show that, while employed, Plaintiff never complained internally or externally that she believed that she was subjected to employment discrimination, harassment or retaliation on the basis of her race.

15. Defendants expect the evidence to show that throughout her employment, Plaintiff was fully aware of the procedures for making a charge of discrimination at the state and federal agencies responsible for receiving such charges and that she failed to make any such charge against the Defendants during her employment with Fleet.

### DAMAGES: PLAINTIFF

Plaintiff will testify to the humiliation, despair and anguish which she experienced, over the discriminatory, harassing and retaliatory treatment to which she was subjected. Plaintiff's expectation was that she would have full time employment with the Bank and that she would receive promotions, based on her ability. Plaintiff did interview for the position of TS II, and was informed that the interviewers planned to call her back for a second interview. But for the abrupt termination, plaintiff expected that she would have been hired for the new position.

The facts show that the defendants engaged in egregious, racially motivated misconduct which warrants the imposition of punitive damages to deter them from engaging in such activities to the detriment and pain of persons in the protected class.

### (ii) Damages: Defendant

1. Defendants expect the evidence to show that Plaintiff was a part time Teller at the time of her termination, that she was working between 23 and 30 hours per week at a rate of $11 per hour and shd did not participate in Fleet's employee benefit plans.

2. Defendants expect the evidence to show that following her termination, Plaintiff did not look for or apply for any positions with any potential employers.

3. Defendants expect the evidence to show that Plaintiff collected unemployment compensation from May 22, 2002 through September 2002, Plaintiff became employed with the Boston Public Schools at a rate of $15.16 per hour.

4. Defendants expect the evidence to show that Plaintiff has no lost wages resulting from her termination from the position of Teller with Fleet.

5. Defendants expect that Plaintiff will be unable to show that she would have received a transfer to another position within Fleet, had she not been terminated for her performance problems.

6. Defendants expect the evidence to show that Plaintiff does not suffer from any compensable emotional distress and that even if she did suffer such emotional distress, she has failed to mitigate her damages by failing to seek medical treatment that was available to her.

7. Defendants expect that there will be no evidence offered by Plaintiff of extreme or outrageous conduct of the character required in order to sustain an award of punitive damages.

(2) **Defemdants' Suggestion As To Facts Established By The Pleadings Or By Stipulation**

1. Plaintiff was employed as a Teller at Fleet from October 10, 2001 through May 21, 2002 at a rate of $11.00 per hour.

2. Plaintiff worked full time from October 2001 through January, 2002, when she requested a part time schedule.

3. Plaintiff did not participate in Fleet's medical/health insurance plans.

4. Plaintiff was scheduled to work on May 18, 2002.

5. Plaintiff failed to work on May 18, 2002.

6. Plaintiff was terminated by Fleet effective May 21, 2002.

7. Anderson communicated the termination decision to Plaintiff on May 21, 2002.

(3) **Defendants' Suggestion As To Identification Of Contested Issues of Fact**

1. Fleet's reasons for Plaintiff's termination.

2. Plaintiff's performance in her position as Teller for Fleet.

3. Whether Plaintiff's termination was because of her race, African American.

4. Whether Plaintiff made any complaint of racial discrimination for which she suffered actionable retaliation.

5. Whether Plaintiff was denied the right to make and enforce contracts the same as white male citizens by Defendants.

6. Whether Plaintiff suffered any lost wages or front pay from her termination as a Teller at Fleet.

7. Whether Plaintiff suffered any emotional distress as a result of her termination as a Teller at Fleet.

8  Whether Plaintiff failed to mitigate her damages from her termination as a Teller at Fleet.

**(4) Jurisdictional Questions**

This court lacks jurisdiction to hear and decide Plaintiff's claims under Title VII of the Civil Rights Act of 1964, 42 USC S.2000-e, et seq. as amended, because Plaintiff failed to request and receive a Notice of Right To Sue from the Equal Employment Opportunity Commission prior to filing her claims in court. Therefore all such claims should be dismissed.

**(5) Questions Raised By Pending Motions (Defendants)**

No motions are currently pending.

OUTSTANDING ISSUES: (PLAINTIFF)

The defendant has refused to answer certain interrogatories of the plaintiff after having sought an extension of time for service of answers. Plaintiff has filed a Motion for an Order to Strike and for Further Answers.

**(6) Issues of Law, Including Evidentiary Questions, Together With Supporting Authority** (Defendants)

1. Plaintiff's Telephone Call With Pam LNU

Defendants expect that Plaintiff will seek to testify about a conversation

8

she allegedly had with a person she has identified as "Pam LNU" or "Pam Menaud" or Pam whose last name begins with either an "M" or an "A", regarding a teller difference (overage or shortage of a transaction) attributed to Plaintiff, which she disputed.

Fleet does not have any record of employing any individual by the mame of Pam Menaud or Pamela Menaud. In addition, Fleet can find no record of having employed an invidual with the first name Pam or Pamela and a last name beginning with M or A. Fleet is still attempting to identify this individual, however, to date has been unable to confirm her existence as an employee, her position and her authority to speak on any particular subject with respect to Fleet's business.

Fleet expects Plaintiff to attempt to testify in substance that she called Pam, whose last name she does not know and whose position or title she does not know, and Pam told her that Anderson had a teller difference that was made by Nelson Velez attributed to Plaintiff. Defendants contend that this testimony is inadmissible hearsay and does not qualify as an admission by a party opponent unde F.R.E. 801(d)(2) because Plaintiff cannot sufficiently identify the individual and cannot establish the individual's agency or employment with Fleet and hr authority to speak about the subject of the allegation.

2. Sufficiency Of Evidence As to Discriminatory Motive

Plaintiff can offer no evidence sufficient to permit a finding of discrimination in this case. Plaintiff does not allege any direct evidence of discrimination, any comments from which an inference of discrimination because of her race could be drawn or any comparator evidence from which a determination that others not in Plaintiff's protected category were treated more favorably than her with respect to failing to report as scheduled while on a 90-day final counsel warning for tardiness and absenteeism Bank Secrecy Act violations and excessive teller differences or any other policy violations.

While Plaintiff disputes a single teller difference which she claims was

attributable to another Teller, she can offer no credible evidence to suggest that her other performance issues, including a host of other teller differences, absences from work, lateness getting to work and Bank Secrecy Act violations were wrongly attributed to her and an in fact a pretext for discrimination.

Further she cannot and does not claim that she in fact did report to work on May 18, 2002 but was falsely accused of being absent.

### PLAINTIFF'S PRIMA FACIE EVIDENCE OF ADVERSE ACTION TAKEN ON ACCOUNT OF RACE

A party makes out a a claim of actionable discriminatory treatment by showing that: s/he is a member of a protected class; s/he was qualified for the position which s/he held; s/he adequately performed the duties of the position; and; she was subjected to adverse employment action under circumstances which give rise to an inference of unlawful discrimination. Whiting v. Jackson State Univ., 616 F.2d 116 (5th.Cir.,1979).

The facts show that plaintiff's race was the determinative factor in the decision to terminate. Plaintiff will testify that Pam, an employee of the Bank and a person whom defendant Kimber Anderson identified as such, in her deposition in this action, told her that Anderson had ordered that Teller differences of Nelson Velez be attributed to plaintiff. When plaintiff protested to Anderson over this discriminatory action, Anderson became annoyed at her, shouted at her and prevented her from inspecting teller tapes which would have corroborated the information provided by Pam. It was shortly after these incidents that Anderson terminated plaintiff.

3. Complaint of Discrimination Sufficient To Sustain Retaliation Claims (Defendants)

Plaintiff cannot support a claim of retaliation because she cannot show that she made any complaint of discrimination or engaged in any activity from which she would be protected from retaliation under the law prior to the termination for performance reasons.

PRIMA FACIE EVIDENCE OF RETALIATION (PLAINTIFF)

The facts will show that there was a confrontation at Exeter Plaza between plaintiff and Anderson and that plaintiff told Anderson her actions were discriminatory and that she did not want her to find out the truth. Shortly after this episode, Anderson terminated plaintiff.

A claim of retaliation is made out by showing that: the complainant opposed or protested against discrimination; the employer was aware of the opposition; the employee was subjected to adverse action; there was a causal connection between the adverse action and the protected activity. Hochstadt v. Worcester Foundation for Experimental Biology, 425 F.Supp. 318, 324, aff'd, 545 F.2d 222 (1st.Cir.,1976). The factual truth of the employee's complaint is not the controlling issue. Even if a non-frivolous claim is resolved in the employer's favour, it does not justify the attempt to suppress it by penalizing the employee who raised it. Parker v. B & O R.R.Co., 658 F.2d 1012 (D.D.C., 1981).

Plaintiff opposed the discriminatory conduct of Anderson. The fact that she did not put it the complaint in writing is not dispositive. The defendant Anderson was a supervisory official, who, according to the provisions of the defendant's Employee Handbook, had responsibility for enforcing its policy of fair employment practices and freedom from harassment and retaliation on account of the making of complaints.

4. Plaintiff's Failure To Comply With Procedural Prerequisites of Title VII

Plaintiff cannot show that she complied with the procedural prerequisite that she request and receive a Notice of Right To Sue from the Equal Employment Opportunity Commission prior to filing any claims under Title VII, 42 USC S.2000e, et seq. Therefore, Plaintiff's claims under Title VII should be dismissed with prejudice.

THERE IS NO JURISDICTIONAL BAR TO THIS ACTION UUNDER THE PROVISIONS OF TITLE VII

The fact that the plaintiff may not have received a Right To Sue letter from

11

the EEOC prior to commencing her action in state court is not a bar to this action. Plaintiff did file a Charge at the MCAD and cross-filed the Charge with the EEOC. The practice in this jurisdiction is that when a party requests dismissal of an action by MCAD, s/he requests that the action be also dismissed by the EEOC. In Portis v. State of Ohio, 141 F.3d 632, 634-5 (6th.Cir.,1998) the court reversed the dismissal of the plaintiff's Title VII claims. The defendant argued that the plaintiff had filed suit before the Notice arrived from the EEOC. The court declared that receipt of the notice was a non-jurisdictional requirement and declined to bar the claim on that ground, and noted that the defendant had suffered no prejudice.

In the instant case, the defendants had notice of the Charge filed at MCAD and vigorously contested the very same allegations in that forum. Defendants can point to no prejudice on account of the plaintiff's non-receipt of a Right To Sue Notice.

**(8) Additional Matters (Defendant)**

None at this time.

NAMES AND ADDRESSES OF WITNESSES LIKELY TO BE CALLED BY PLAINTIFF:

Plaintiff anticipates that she will call: Kimber Anderson, Brian Gibbs, Jane Gervais, Benefits Coordinator of Fleet National Bank, Treasurer of Fleet National Bank; Director of Dept. of Human Resources, Fleet National Bank; Kayon Kerr; Mark Averill; Thomas Lassiter, Keeper of Records MCAD, Keeper of Records South End Community Health Center, any witness listed by defendants. Plaintiff reserves the right to call rebuttal witnesses. Plaintiff reserves the right to supplement this list.

**Witnesses (Defendants)**

Jacqueline Lassiter-Plaintiff

Brian Gibbs-Defendant

Jane Gervais-Defendant Fleet National Bank representative
% Siobhan Sweeney, Esq.
Edwards & Angell, LLP
101 Federal Street
Boston, Ma.02110

Stacey Micka
9 Rivermeadow Rd.
Chelmsford, Ma.01824
Tel. 978-256-7174
Defendants reserve the right to amend and supplement this list.

EXHIBITS FOR PLAINTIFF:

Excerpts from plaintiff's personnel file; defendant's policies on: Attendance & Punctuality and Teller Standards; defendant's policy on retention of Teller Tapes; Time Sheets; Managers' Guide; policy on resolution of employee grievances; policy on discipline and/or termination; Application for position as Training Specialist II; correspondence from plaintiff to defendant, including requests for correction to plaintiff's Personnel File; Mental Health Treatment Records from the South End Community Health Center/Dr.Johnnie Hamilton-Mason; Resume and Curriculum Vitae of Dr.Hamilton-Mason; excerpts from the Employee Handbook; excerpts from defendant's Answers to Plaintiff's Interrogatories and to Plaintiff's Request For Production of Documents; excerpts from filings at MCAD in Charge of: Lassiter v. Anderson et al.; Salary history for the position of TS II; tax returns of defendants Gibbs and Anderson; excerpts from 41 CFR S.60-1.40 et seq.; G.L.c.149 S.52C; excerpts from deposition transcripts of defendants.

**Defendants' Proposed Exhibits**
1. Lassiter Dep.Exhibit 1
2. Lassiter Dep.Exhibit 2
3. Lassiter Dep.Exhibit 3
4. Lassiter Dep.Exhibit 6
5. Lassiter Dep.Exhibit 7
6. Lassiter Dep.Exhibit 8
7. Lassiter Dep.Exhibit 9
8. Lassiter Dep.Exhibit 11
9. Lassiter Dep. Exhibit 12
10. Lassiter Dep.Exhibit 13
11. Lassiter Dep.Exhibit 14
12. Lassiter Dep. Exhibit 15
13. Lassiter Dep.Exhibit 18

14. Lassiter Dep.Exhibit 19

Defendants reserve the right to amend and supplement this list.

. NAME AND ADDRESS OF PLAINTIFF'S EXPERT:

Plaintiff expects to call Dr.Johnnie Hamiltonl-Mason; a Professor at Simmons College and who also treats patients at the South End Community Health Center, 1601 Washington Street, Boston, Ma., as an expert witness. Dr.Hamilton-Mason is expected to testify that the plaintiff suffered depression as a result of the discriminatory and harassing conduct of the defendants and that the depression was causally related to the conditions of the employment at Fleet National Bank.

ESTIMATED LENGTH OF TRIAL: (PLAINTIFF)

Four to five days.

SETTLEMENT POSSIBILITIES:

Plaintiff made a demand in the sum of $450, 000 on the defendants. Defendants have made no response.

Plaintiff is prepared to have this matter submitted to mediation.

**Defendants' Position With Respect to Plaintiff's Fed.R.Civ.P.26(a)Disclosures**

Plaintiff has not served Defendants with her Rule 26(a)(3) disclosures in this matter.
Therefore, Defendants reserve all rights to object and otherwise respond to such disclosures within a reasonable time after receipt of same.

                                      FLEET NATIONAL BANK, BRIAN
                                      GIBBS AND KIMBER ANDERSON,
                                      DEFENDANTS
                                      By their attorneys,

                                      /s/ Siobhan M. Sweeney
                                      George P. Kostakos (BBO #57919)
                                      Edwards & Angell, LLP
                                      Providence, RI 02903

(401) 528-5864
(401) 528-5859 (fax)

Siobhan M. Sweeney (BBO#562118)
Edwards & Angell, LLP
101 Federal Street
Boston, Ma.02110
(617) 439-4444
(617) 439-4170 (fax)

Plaintiff,
By her Attorney,

_W.Kendall_
136 Warren Street
Roxbury, Ma.02119
(617) 442-6130